UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LANCE IGOU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:17-cv-02910-JMS-MPB |
| ) | |
| WEXFORD OF INDIANA, LLC, et al. ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SANCTIONS AND DEFENDANTS' CROSS-MOTION FOR SANCTIONS**

**I.  Introduction**

Plaintiff, Lance Igou, has filed a motion for sanctions against the remaining Defendants, Corizon Health, Inc., Megan Miller, Hanna Winningham, and The Geo Group, Inc.[1], pursuant to Fed. R. Civ. P. 11. Igou argues Defendants violated the rule by waiting over six weeks before withdrawing the failure to exhaust defense, a delay which Plaintiff asserts is unreasonable, inexcusable, and in violation of Rule 11. (Docket No. 71 at ECF p. 4). Defendants respond that Fed. R. Civ. P. 11 is not a proper vehicle for the relief Igou seeks and that, even if it was, Igou's request is baseless. (Docket No. 72). As a result, Defendants request cross sanctions also pursuant to Fed. R. Civ. P. 11. *Id.* For the reasons that follow, the undersigned recommends Igou's Motion for Sanctions (Docket No. 71) be denied and recommends Defendants' Cross Motion for Sanctions (Docket No. 72) also be denied.[2]

---

[1] Since the filing of the motions discussed in this report The GEO Group, Inc., has been dismissed without prejudice. (Docket No. 81).

[2] S.D. Ind. Local Rule 7-1(a) prohibits parties from filing a motion within a response filing. In its discretion, the Court will consider Defendants' motion, however parties are reminded to review the requirements of Local Rule 7-1(a).

1

## II.     Background

On August 24, 2017, Plaintiff brought this claim alleging violation of his rights under the U.S. Constitution, Indiana Constitution, and for negligence related to his medical care and treatment for an eye issue. (Docket No. 1). At all times relevant to this lawsuit, Plaintiff has been incarcerated at the New Castle Correctional Facility. *Id.* In Defendants' answers each pled the affirmative defense of failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). (Docket No. 17; Docket No. 23; Docket No. 26). Specifically, Corizon, Winningham, and Miller stated that "Plaintiff may have failed to exhaust his administrative remedies prior to filing suit as required by the [PLRA]." (Docket No. 23 at ECF p. 14, ¶ 7). The GEO Group, Inc.'s affirmative defense stated, "Plaintiff may have failed to exhaust his administrative remedies under the [PLRA] before he filed suit herein." (Docket No. 17 at ECF p. 5, ¶ 3). Wexford of Indiana, LLC's affirmative defense stated, "To the exten[t] Plaintiff failed to exhaust his administrative remedies, which are available to him through the prison grievance procedure, his claims are barred by 42 U.S.C. § 1997e(a)." (Docket No. 26 at ECF p. 12, ¶ 2).

On November 28, 2017, the Court directed the Defendants to take action on their exhaustion defense. (Docket No. 50). Pursuant to the Entry, the Defendants had until February 16, 2018, to either (1) file a dispositive motion in support of the exhaustion defense; (2) file a notice with the Court specifically identifying the fact issue(s) that precluded resolution of this affirmative defense via a dispositive motion and request a *Pavey* hearing; (3) or file a notice with the Court withdrawing the exhaustion defense. *Id.* The Court stated that the exhaustion "defense must be resolved before reaching the merits of this case." *Id*. However, the Court did not explicitly stay the proceedings on the merits on this date. *Id.*

On November 30, 2017, Defendants filed a Joint Motion to Stay Proceedings Pending Resolution of the Exhaustion Defense. (Docket No. 52). After the motion was fully briefed, the Court granted this request on December 20, 2017. (Docket No. 60). Each Defendant provided notice of the withdrawal of the defense to the Court on or before February 16, 2018, in compliance with the Court's Order. (Docket No. 61; Docket No. 62; Docket No. 63).[3]

## III. Conclusions of Law

### A. Standard

Plaintiff has moved for sanctions pursuant to Federal Rules of Civil Procedure 11(b). Rule 11 enables courts to impose sanctions on parties who violate its provision. Fed. R. Civ. P. 11(c). Rule 11 imposes a duty on attorneys to inquire reasonably into any court paper's viability before signing it. *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 751 (7th Cir. 1988). Specifically, Rule 11(b) states:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary

---

[3] Other Defendants also withdrew their exhaustion defenses, but were dismissed prior to Igou's Motion for Sanctions and were not named by Igou in his sanctions request. (Docket No. 64; Docket No. 68).

> support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if so specifically identified are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). The Seventh Circuit has instructed that "[t]he district court in analyzing a Rule 11 sanction claim should determine if there has been a 'callous disregard for governing law or the procedures of the court . . .'" *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs.*, 9 F.3d 1263, 1269 (7th Cir. 1993) (*quoting Allison v. Dugan*, 951 F.2d 828, 834 (7th Cir. 1992)).

To determine whether an attorney's conduct violated Rule 11, the court employs an "objectively reasonable standard." *Thompson v. Duke*, 940 F.2d 192, 194 (7th Cir. 1991). An attorney is shielded from the sanctions of the rule if (1) a "reasonable inquiry" is made into both fact and law; (2) the pleading is submitted in good faith without the intention to harass; (3) the legal theory asserted is objectively "warranted by existing law or a good faith argument" for extension or modification of the law; and (4) the filing is "well grounded in fact." *Id.* at 195 (quoting *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987)).

**B. Igou's Motion for Sanctions (Docket No. 71)**

The Prisoner Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; *see Porter v. Nussie*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted). Moreover, the "exhaustion

requirement is strict. A prisoner must comply with the specific procedures and deadlines established by the prison's policy." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

"At the same time, the [PLRA] requires exhaustion only of remedies that are 'available.'" *Id.* The exhaustion requirement "is an affirmative defense that a defendant has the burden of proving." *Id.* It must be resolved before reaching the merits of the case. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

It is unclear from Igou's motion whether he is asserting that Defendants' filing of the affirmative defense within their answers was sanctionable or whether the notifications to the Court that Defendants would not pursue the exhaustion defense were sanctionable. Given Igou's motion mainly focuses on the procedural happenings of the case post-answers, the Court infers that Igou asserts the notifications were sanctionable. However, even if one construes Igou's motion to argue that the answers were sanctionable, Igou comes far short of establishing his burden as he makes no argument that the answers were submitted in bad faith or with an intent to harass and he admits that defense counsel had all copies of Igou's grievances as early as January 3, 2018, after the answers were filed (latest Answer filing date October 12, 2017). (Docket No. 71 at ECF p. 4). This, combined with the noncommittal language by which Defendants raised the exhaustion defense in their answers (i.e., "Plaintiff may have failed" and "To the exten[t] Plaintiff failed"), is evidence that Defendants' answers do not approach sanctionable filings given that there is no evidence they were not filed in good faith without an intent to harass.

Igou's motion focuses more on the procedural posture between the answers being filed and the Defendants' notifications that they would not pursue the asserted exhaustion defenses. More succinctly, Igou argues the "44-day delay in notifying the Court of [their withdrawals] is unreasonable, inexcusable, and in violation of Rule 11." (Docket No. 71 at ECF p. 4). Igou's

5

request is problematic for several reasons. First, Igou is not arguing that the motions or notifications of intent not to pursue, themselves, were made without reasonably inquiry, were not submitted in good faith, were not warranted by existing law, or well-grounded in fact. In fact, Igou admits that the notifications were warranted by existing law and well-grounded in fact. (Docket No. 71 at ECF p. 4) ("The conclusion, at least, was correct[.]"). Igou is arguing the "delay" between receiving all the evidence on January 3, 2018, and the February 16, 2018, filing of the notifications was sanctionable pursuant to Fed. R. Civ. P. 11. The timing between these two events cannot be equated to Fed. R. Civ. P. 11(b)'s focus of representations presented to the Court. Igou presents no authority to support that conclusion and an independent search also found no supporting authority.

However, even if we assume Fed. R. Civ. P. 11 was a proper vehicle for Igou's arguments, the undersigned still concludes sanctions are inappropriate. On November 28, 2017, the Court issued an Entry Directing Development of Exhaustion Defense (Docket No. 50). There, the Court, while not explicitly staying discovery, recognized the *Pavey* holding requiring that the exhaustion defense must be resolved before reaching the merits of the case. (Docket No. 50 at ECF p. 1). Thus, the Court provided Defendants until February 16, 2018, in which to do one of three things, one option being to file a notice with the Court withdrawing the exhaustion defense. (Docket No. 50 at ECF p. 2). On November 30, 2017, Defendants filed a Motion to Stay the Scheduling Order Proceedings Pending Resolution of the Exhaustion Defense (Docket No. 52), and after the matter was fully briefed, the Court granted that motion. (Docket No. 60). There, the Court reiterated the *Pavey* court's reasoning "that [when exhaustion under the PLRA is contested] in the ordinary case discovery with respect to the merits should be deferred until the issue of exhaustion is resolved." *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

The parties may have been uncertain as to whether substantive discovery should continue between November 28, 2017, the date the Entry Directing Development of Exhaustion Defense (Docket No. 50) and the Case Management Order setting deadlines (Docket No. 51) were simultaneously entered, and December 20, 2017, the date the Court granted Defendants' motion to stay activities in the matter except for activities associated with the development and resolution of the exhaustion defense. (Docket No. 60). However, this uncertainty is not a proper basis to find for Rule 11 sanctions—as Igou attempts to argue.

Moreover, the time between January 3, 2018, and the February 15 and 16, 2018, Defendants' filings withdrawing their exhaustion defenses was not only within the Court's orders, but also reasonable. Defendants argue they were unable to investigate the exhaustion defense prior to having to file an Answer to Plaintiff's Complaint because all counsel had to wait to receive grievance records from The Geo Group, Inc., the private entity that runs the New Castle Correctional Facility. (Docket No. 72 at ECF p. 6). Defendants assert that these grievance records were not made available to defense counsel until after the deadline by which the respective Answer and Affirmative Defenses were to be filed had passed.[4] *Id.* Moreover, the time between January 3, 2018, and February 15 and 16, 2018 was reasonable considering each defense counsel needed to independently review the discovery and communicate with clients regarding their litigation plans as to the exhaustion defense. Defendants fully abided by this Court's entries, thus there has been no showing of "callous disregard for governing law or the procedures of the court . . ." *Allison v. Dugan,* 951 F.2d 828, 834 (7th Cir. 1992).

---

[4] It would have been more appropriate for Defendants to have filed these assertions via affidavits, but even without this argument Plaintiff's sanctions request fails; therefore, the lack of affidavits does not affect the ultimate recommendation reached.

7

To the extent Igou argues that Corizon, Wexford, and The GEO Group, Inc., knew or should have known that Plaintiff exhausted his administrative remedies before asserting the affirmative defense of failure to exhaust, he provides no basis for this conclusion and it also is wholly irrelevant for purposes of a Rule 11 violation, which only applies to the attorneys or unrepresented parties who signed the responsive pleadings and asserted the defense; not the defendants themselves.

It is the best use of this busy Court's time and party resources if parties file meritable pleadings, motions, or other papers for the Court to consider—thus, reasonable time spent reviewing and investigating discovery to determine whether to pursue a particular litigation strategy is the best use of resources. In fact, it is a driving factor of the Court's Entry Directing Development of Exhaustion Defense and is aligned with the Seventh Circuit's directives in *Pavey*. [Pavey, 544 F.3d at 742](#) ("If merits discovery is allowed to begin before that resolution, the statutory goal of sparing federal courts the burden of prisoner litigation until and unless the prisoner has exhausted his administrative remedies will not be achieved.").

For these reasons, I recommend that Igou's Motion for Sanctions ([Docket No. 71](#)) be denied.

### C. Defendants' Motion for Sanctions ([Docket No. 72](#))

Defendants move for sanctions against Plaintiff's pursuant to Fed. R. Civ. P. 11, arguing that Plaintiff's Motion for Sanctions is the definition of frivolous and violates Rule 11(b). ([Docket No. 72](#)).

Defendants' motion fails to satisfy [S.D. Ind. Local Rule 7-1(g)](#), in that it does not provide a "statement showing that the attorney made reasonable efforts to confer with opposing counsel and resolve the matters raised in the motion[,]" including (a) "the date, time, and place of all

conferences; and (b) "the names of all conference participants." Although it could be argued that the emails Defendants attached as exhibits to their motion (Docket No. 72-1), where defense counsel indicates they will file for cross-sanctions if Plaintiff's above motion is filed practically provide the information contemplated in Local Rule 7-1(g), the rule explicitly states "[t]he court may not grant [the motion] unless the movant's attorney files with the motion a statement[.]" S.D. Ind. Local Rule 7-1(g).

Moreover, and more notably, Defendants also failed to comply with the safe harbor provision of Fed. R. Civ. P. 11(c)(2), which provides "the [Rule 11 motion] must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." However, the Advisory Committee Note to the 1993 Amendment to the rules does provide that, "service of a cross motion under Rule 11 should rarely be needed since . . . the court may award the person who prevails on a motion under Rule 11 – whether the movant or the target of the motion – reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion." Fed. R. Civ. P. 11, Advisory Committee Note on 1993 Amendments. Moreover, at least one other district in the Seventh Circuit has held that compliance with the safe harbor provision is still required if the party responding to a motion for sanctions is to be awarded fees and costs as a separate sanction, and not simply for successfully defending against the motion. *See Boim v. Quranic Literacy Institute*, No. Civ. 00 C 2905, 2003 WL 1956132, at *3-*4 (N.D. Ill. Apr. 24, 2003).

In *Boim*, the defendants filed multiple motions to dismiss, as well as motions for sanctions against plaintiffs for filing what defendants characterized as a legally baseless complaint. *Id.* at *1. The court denied defendants' Rule 11 motion and awarded plaintiffs their

9

fees and costs "related to the preparation of the response to those motions." *Id.* at *2. After an interlocutory appeal irrelevant to *Boim*'s use here, the plaintiffs filed a petition to enforce the award that they received as the prevailing party to the sanctions motion, seeking nearly $58,000 in fees and costs. *Id.* Plaintiffs urged that the court's award of fees and costs be interpreted to the costs incurred in not only opposing the motion for sanctions, but also the motions to dismiss. *Id.* Defendants opposed the sanctions petition, arguing plaintiffs had not met Rule 11's "safe harbor" provision in Fed. R. Civ. P. 11(c)(2). The Court held that the sanctions award was not pursuant to plaintiff's own motion, but instead awarded pursuant to Rule 11(c)(1)(A) for the fees and costs for successfully defending against the sanctions motion. *Id.* at *4. The Court upheld the award, but held that it was to be limited to the fees and costs associated with responding to the motion for sanctions, only. *Id.* at *8.

Thus, akin to *Boim*'s, here Defendants have made no attempt to abide by the "safe harbor" provision in Fed. R. Civ. P. 11(c)(2), as there is no evidence that they served their cross motion pursuant to Rule 5. The Seventh Circuit Court of Appeals has held that the twenty-one day safe harbor "is not merely an empty formality." *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1026 (7th Cir. 1999). Instead, the safe-harbor period shelters the offending party from Rule 11 sanctions if it withdraws or appropriately corrects the challenged item within twenty-one days. *See* Fed. R. Civ. P. 11 cmt. 1993 Amendments ("[A] party *will not* be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position. . . .") (emphasis added).

There is no indication Defendants' cross-motion for sanctions was served in accordance with Rule 5 and the defense counsels' threats to seek sanctions if Plaintiff's above motion was filed (Docket No. 72-1) are insufficient to meet the Seventh Circuit's interpretation of the safe-

10

harbor rule. This is even considering the oft criticized, though still controlling "substantial compliance" standard in Nisenbaum v. Milwaukee County, 333 F.3d 804, 808 (7th Cir. 2003), because unlike Nisenbaum, the emails providing warnings were sent on March 30, 2018, less than twenty-one days before the cross motion was filed on April 4, 2018. (Docket No. 72-1). Substantial compliance requires the opportunity to withdraw or correct the challenged pleading within twenty-one days without imposition of sanctions. Northern Ill. Telecom, Inc. v. PNC Bank, N.A., 850 F.3d 880, 888 (7th Cir. 2017). Thus, Defendants' cross-motion for sanctions has been improperly filed pursuant to Local Rule 7-1 and Fed. R. Civ. P. 11(c)(2).

    Rule 11 does authorize the court, in its discretion, to award "to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." Fed. R. Civ. P. 11(c)(1). However, here the undersigned finds an award of reasonable expenses and fees incurred in opposing the motions inappropriate for a couple of reasons. First, both Plaintiff and Defendants filed sanctions motions pursuant to Fed. R. Civ. P. 11 and it is recommended that both motions be denied—thus, an award for fees incurred to defend either motion seems counterintuitive. Second, given both motions required minimal effort to oppose due to, in Plaintiff's case, its lack of authority and substance, and, in Defendants' case, its procedural deficiencies, an award of fees to the prevailing party is not warranted. *See Capitol Specialty Ins. Corp. v. Whitaker*, 2009 WL 2488275, at *3 (S.D. Ill. Aug. 13, 2009) ("[A]n award of fees [to the prevailing party] on the sanctions request, is not warranted in light of the minimal efforts needed to oppose the clearly insufficient request for sanctions.").

    For all these reasons, I recommend that Defendants' Motion for Sanctions (Docket No. 72) be denied.

## IV. Conclusion

For the above reasons, the undersigned recommends that Plaintiff's Motion for Sanctions (Docket No. 71) and Defendants' Cross-Motion for Sanctions (Docket No. 72) be denied.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO ORDERED.**

**Dated:** June 8, 2018

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Distribution:

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Bryan Findley
INDIANA ATTORNEY GENERAL
bryan.findley@atg.in.gov

Adam Garth Forrest
BOSTON BEVER KLINGE CROSS & CHIDESTER
aforrest@bbkcc.com

Ashlie K. Keaton
BLEEKE DILLON CRANDALL ATTORNEYS
ashlie@bleekedilloncrandall.com

Jonathan Charles Little
SAEED & LITTLE, LLP
jon@sllawfirm.com

Bradley C. Lohmeier
SAEED & LITTLE LLP
bradley@sllawfirm.com

Jarrod Alvin Malone
KATZ  KORIN CUNNINGHAM, P.C.
jmalone@kkclegal.com

Jessica A. Wegg
SAEED & LITTLE LLP
jessica@sllawfirm.com